**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Knorr, | No. CV-22-00608-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Daisy Mountain Fire District, et al., | |
| Defendants. | |

Jeremy Knorr ("Plaintiff") worked as a firefighter for the Daisy Mountain Fire District ("the District") from 1992 until 2019, when he was terminated at least in part due to his inability to comply with a new fitness policy ("the Health Center Policy"), adopted by the Daisy Mountain Fire District Board ("the Fire Board") in late 2017, that required all District firefighters to take a yearly treadmill test and receive a Metabolic Equivalent Task ("MET") score—which is a measure of cardiorespiratory and aerobic fitness—of at least 12.

In this action, Plaintiff has sued the District, the Fire Board, and the individual members of the Fire Board (together, "Defendants") for age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") and for disability discrimination in violation of the Americans with Disabilities Act ("ADA"). In a concurrently filed order, the Court has determined that Plaintiff's ADEA and ADA claims should, at least in part, survive summary judgment.

This order addresses a pair of expert-exclusion motions. First, Plaintiff moves to

exclude the opinions of one of Defendants' experts, Mark Hyland.  (Doc. 65.)  Second, Defendants move to exclude the opinions of Plaintiff's economic-damages expert, Michael Stokes.  (Doc. 66.)  For the reasons that follow, Plaintiff's motion to exclude Hyland is granted in part and denied in part and Defendants' motion to exclude Stokes is denied.

## DISCUSSION

I.   Legal Standard

"The party offering expert testimony has the burden of establishing its admissibility."  *Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).  Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.*

As for the threshold requirement that an expert witness be qualified "by knowledge, skill, experience, training, or education," "Rule 702 contemplates a broad conception of expert qualifications."  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (internal quotation marks and emphasis omitted).  Years of relevant experience can establish the necessary "minimal foundation."  *Id.* at 1015-16.  "Disputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony."  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (cleaned up).

A district court's decision to admit or exclude expert testimony is guided by a two-part test that focuses on the opinion's relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993). "The inquiry envisioned by Rule 702 is . . . a flexible one." *Id.* at 594. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 587 (quoting Fed. R. Evid. 401) (internal quotation marks omitted). "The Rule's basic standard of relevance thus is a liberal one." *Id.*

The basic standard of reliability is similarly broad. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). *See also* Fed. R. Evid. 702, advisory committee's note to 2000 amendment ("[P]roponents do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.") (cleaned up).

Nevertheless, courts serve an important "gatekeeper" role when it comes to screening expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997). "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (internal citation omitted). "Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* This "general 'gatekeeping' obligation . . . applies not only to testimony based on 'scientific' knowledge,

but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Court has "broad discretion," both in deciding whether the evidence is reliable and in deciding how to test for reliability. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). In *Daubert*, the Supreme Court listed various factors that might apply, including whether the expert's technique or theory (1) can be tested; (2) has been peer reviewed or published; (3) has a known or potential basis for error; and (4) is generally accepted in the pertinent scientific community. 509 U.S. at 593-94. However, "[t]he *Daubert* factors were not intended to be exhaustive nor to apply in every case." *Hankey*, 203 F.3d at 1168. In particular, "[t]he *Daubert* factors . . . simply are not applicable to [testimony] whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* at 1169. *See also* Fed. R. Evid. 702, advisory committee's note to 2000 amendment ("Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."). The bottom line is that "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." *See* Fed. R. Evid. 702, advisory committee's note to 2000 amendment.

II.      Plaintiff's Motion To Exclude Hyland

A.      **Hyland's Opinions**

Mark Hyland was, at relevant times, the director of clinical operations at STI Physical Therapy and Rehabilitation/STI Occupational Health ("STI"), which was the health center responsible for administering the treadmill-test component of the District's Health Center Policy. (Doc. 65-1 at 11-12.) Defendants retained Hyland to serve as their

expert in this case, and Hyland issued a written report on August 11, 2023.  (*Id.* at 16-27.)

In his report, Hyland explains that he "was retained to review and analyze the necessity for, and the requirements of, the Health Center Policy at the Daisy Mountain Fire District and to explain the various tests offered by the District to measure cardiovascular and aerobic fitness ability." (*Id.* at 16.)  In the "summary of opinions" section of the report, Hyland states that he intends to offer the following opinions at trial:

1. "Firefighters require a high standard of physical fitness for safe and efficient job performance for their essential job demands."

2. "The District has a legitimate interest and duty to determine and ensure its employees can perform their duties safely and that its employees are not a danger to themselves, their coworkers, and members of the public."

3. "The District's Health Center Policy was based upon NFTA standards and appropriately set forth guidelines to determine whether its employees could safely perform their duties."

4. "The treadmill test and MET standards the District used to measure fitness levels were reasonable and appropriate."

5. "Cardiovascular standards are necessary for firefighters to adequately perform their job and for the health and safety of the firefighters, their coworkers, and the public."

6. "[Plaintiff] consistently scored below 12.0 MET, which indicated he was not physically fit to safely perform the functions of his job."

7. "[Plaintiff's] MET score would remain consistent regardless of whether he performed the treadmill test, the walking test, or the CPET/bike test."

8. "The walking test is a more difficult and strenuous test than the treadmill test."

9. "I would not have recommended the walking test to [Plaintiff] because it would have put him at an increased risk for an adverse cardiovascular event."

10. "[Plaintiff's] Tier 4 fitness MET scope indicates he was not fit to return to

1  work as a firefighter in the District, indicates he could not safely perform the

2  duties of a firefighter, and created a situation in which [Plaintiff] was a

3  danger to himself, his coworkers, and members of the public."

4  (*Id.* at 23-24.)

5      B.    **The Parties' Arguments**

6          Plaintiff moves to preclude Hyland from testifying on the grounds that "1) Hyland

7  is not medically qualified to testify regarding several areas and 2) the few areas he may

8  have experience with do not require expert testimony." (Doc. 65 at 1.) As for qualification,

9  Plaintiff notes that Hyland is not a physician; that Hyland's responsibilities at STI were

10  limited to "recruiting and hiring medical professionals and other employees, and budgeting,

11  contracting and other business development"; that Hyland was typically not present when

12  firefighters took the treadmill test at STI (instead, the reporting on treadmill test results was

13  performed by STI's medical director); that Hyland admitted during his deposition that he

14  "had no meaningful input into the policy at issue"; and that Hyland has never previously

15  provided expert testimony on whether such a policy is reasonable or "medically sound."

16  (*Id.* at 3-5.) Given this backdrop, Plaintiff argues that Hyland "is not medically qualified

17  to opine on . . . cardiovascular risks to a firefighter like Plaintiff in taking an alternative to

18  the running treadmill test or the likelihood of Plaintiff passing a running or other alternative

19  aerobic test if provided sufficient time to prepare for the test." (*Id.* at 6.) Plaintiff also

20  contends that Hyland's opinion that Plaintiff's MET score would have remained the same

21  regardless of whether he took a running test, a treadmill test, or a walking test is

22  contradicted by "medical principles," by Hyland's previous statements, and by the opinion

23  of the medical expert that the District retained in this case to perform an independent

24  medical evaluation. (*Id.* at 6-7.) Finally, as for Hyland's remaining opinions, Plaintiff

25  contends they should be excluded because they relate to issues that are undisputed or are

26  otherwise so obvious that they "do not require expert testimony," such as whether

27  "firefighters need a level of physical fitness for safe and efficient job performance,"

28  whether "a cardiovascular fit firefighter is necessary to adequately perform his job for the

health and safety of firefighters, coworkers and the public," whether "the District has a legitimate interest to determine that its employees can perform their duties safely," and whether "firefighters need to be fit to perform their jobs." (*Id.* at 5, 7.) Plaintiff also contends that "even those opinions are not based on methods and procedures of science, but rather on subjective belief or unsupported speculation. Expert testimony based on such completely subjective methodology should be excluded." (*Id.* at 7.)

In response, Defendants argue that "the only opinions [Plaintiff] challenges are Hyland's opinions regarding the fitness tests provided to the District's employees, the suitability and availability of other tests, and [Plaintiff's] overall health and fitness levels. [Plaintiff] challenges these opinions because Hyland 'is not a physician.' This is true. However, Hyland need not be a physician to render his opinions. In his capacity as the Director of Clinical Operations for STI, Hyland oversaw the administration of the Gerkin treadmill, including the test administered to [Plaintiff]. He also has knowledge about the Balke walking test and the CPET bike test, and applied this knowledge to [Plaintiff's] job duties and fitness test results to conclude the Balke walking test and CPET bike test were not suitable alternative tests. He also has knowledge and experience to interpret [Plaintiff's] test results, identify [Plaintiff's] MET scores, and opine that [Plaintiff's] MET scores indicate a lack of physical fitness to perform the job duties of a firefighter and place [Plaintiff] at a risk of danger to himself, his coworkers, and the public." (Doc. 67 at 4.) Defendants also contend that these opinions are relevant for various reasons and that "Hyland's opinions are also reliable because they are based upon his knowledge, skill, experience, and review of the relevant documents. [Plaintiff] can raise any challenges to Hyland's opinions on cross-examination, but his challenges do not require the exclusion of the opinions." (*Id.* at 4-5.)

In reply, Plaintiff reiterates his argument that "many of Hyland's alleged opinions are not areas where the trier of fact needs expert testimony, such as that firefighters need a level of physical fitness for safe and efficient job performance, that a physically fit firefighter is necessary to adequately perform his job for the health and safety of

firefighters, coworkers and the public and that the District had a legitimate interest to determine that its employees can perform their duties safely.  As noted before, these facts are not in dispute and numerous fact witnesses have already testified to these items.  To allow expert testimony on these commonsense issues is not only unnecessary but will confuse the jury and prejudice Plaintiff."  (Doc. 70 at 2.)  Next, Plaintiff argues for the first time that some of Hyland's opinions should be excluded on late-disclosure grounds, because they are intended to support Defendants' affirmative defenses and thus were subject to an earlier disclosure deadline under the scheduling order.  (*Id.* at 2-3.)  Next, Plaintiff clarifies that his challenge to Hyland's qualifications is not "based solely on the fact that [Hyland] is not a physician" but is also based on the fact that "[s]imply being involved in the daily operations of the health center does not qualify [Hyland] to opine" on such medical issues as "Plaintiff's cardiovascular health, Plaintiff's future cardiovascular health, whether Plaintiff would have ever been fit enough to achieve an acceptable MET score and whether alternative treadmill tests would put Plaintiff at risk."  (*Id.* at 4.)  Plaintiff also reiterates that Hyland has not previously provided expert testimony on those topics and that Hyland's opinions are contradicted by other evidence.  (*Id.*)

C.  **Analysis**

As an initial matter, Plaintiff argues in his motion that several of Hyland's proffered opinions should be excluded as irrelevant and unfairly prejudicial because they relate to obvious, undisputed issues that do not require expertise.  These are permissible bases for seeking exclusion under Rule 702.  *See, e.g., Daubert*, 509 U.S. at 589-91, 595 (emphasizing that "the trial judge must ensure that any and all scientific testimony or evidence admitted is . . . relevant," that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful," and that "the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses") (cleaned up).  However, Defendants make no effort to respond to these arguments in their response.  Instead, they contend— incorrectly—that "the only opinions [Plaintiff] challenges are Hyland's opinions regarding

the fitness tests provided to the District's employees, the suitability and availability of other tests, and [Plaintiff's] overall health and fitness levels" (Doc. 67 at 4) and then proceed to offer a defense of those opinions.  It follows that Defendants have forfeited any defense of the subset of Hyland's opinions challenged on relevance/403 grounds and have thus not met their burden of establishing the admissibility of those opinions.  Accordingly, Hyland's first ("Firefighters require a high standard of physical fitness for safe and efficient job performance for their essential job demands."), second ("The District had a legitimate interest and duty to determine and ensure its employees can perform their duties safely and that its employees are not a danger to themselves, their coworkers, and members of the public"), and fifth ("Cardiovascular standards are necessary for firefighters to adequately perform their job and for the health and safety of the firefighters, their coworkers, and the public.") opinions are excluded.[1]

Plaintiff's primary objection to Hyland's remaining opinions is that Hyland is unqualified to render them because they call for medical expertise but Hyland is not a doctor and did not play a direct role in administering the treadmill tests at STI.  Although this challenge is not frivolous, the Ninth Circuit has emphasized that Rule 702 "is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994).  The proponent of expert testimony need only lay a "minimal foundation" of "knowledge, skill, experience, training, or education" in the topic at hand.  *Id.*  Although an expert may not offer opinions on matters "outside the areas of [the expert's] expertise," *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011), an expert's "lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert."  *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993).  In light of these standards, Hyland is not subject to exclusion.  Although having medical training and first-hand experience administering the treadmill test would certainly be one way of gaining the

---

[1]     As discussed during oral argument, if Plaintiff were somehow to dispute the premises underlying these excluded opinions during trial, that would likely open the door to allowing Hyland to present them.

expertise and qualifications necessary to offer the opinions at issue here, it is not the only way.  Hyland's report indicates that he is a licensed occupational therapist, is "certified in functional capacity evaluation," has been the director of clinical operations at STI for nearly 30 years, has "performed extensive research and analysis into the health and fitness needs of local business in various industries" including "the Phoenix, Glendale, Goodyear, Prescott and Tempe Fire Departments," has "consulted on the subject of various government rules, regulations, and laws, including the [ADA] and OOSHA compliance," and has testified as an expert in multiple occasions since 2001.  (Doc. 65-1 at 26.)  The Court is satisfied that this background, training, and experience provides the necessary "minimal foundation," *Thomas*, 42 F.3d at 1269, for Hyland to be qualified to opine on the topics addressed in his remaining opinions (*i.e.*, the suitability and necessity of the Health Center Policy for firefighters; whether Plaintiff's inability to comply with the Health Center Policy precluded Plaintiff from performing the functions of his job; the differences between the treadmill test, the walking test, and the bike test; and how Plaintiff would have fared on the latter two tests).

Nor is there any merit to Plaintiff's contention that Hyland's opinions on these topics should be excluded because they are contradicted by other evidence.  As the Ninth Circuit has repeatedly emphasized, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.  Judges should "not exclude opinions merely because they are impeachable."  *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969.

Plaintiff's motion also raises a fleeting challenge to the reliability of Hyland's opinions, but that objection is unavailing.  Among other things, Hyland explains in his report that the Health Center Policy "was developed and based upon National Fire Protection Association ('NFPA') 1500 & 1582," which "standards include, among other factors, spirometry pulmonary function screening and sub-maximal ECG performance tests"; that Hyland has also reviewed "[r]esearch with firefighters [that] indicates that a minimum aerobic capacity of 12.0 METS . . . is necessary for safe fire ground operations";

that "[t]he Gerkin Treadmill protocol was developed by . . . a cardiologist who worked at the Phoenix Fire Departments Health Center" and is "recognized by NFPA 1582 as the standardized test to measure cardiovascular and fitness status among firefighters"; that research indicates that "most individuals who take the Balke [walking] test fall under the target METS, just as they would on the standard Gerkin protocol"; and that for this and other reasons, "STI [has] stopped offering the Balke protocol to anyone."  (Doc. 65-1 at 16-19.)  Given these explanations, this is not a situation where the challenged "opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert."  *Joiner*, 522 U.S. at 146.  To the contrary, Hyland has adequately explained how his opinions are "grounded in an accepted body of learning or experience in the expert's field" and has also adequately "explain[ed] how the conclusion is so grounded."  *See* Fed. R. Evid. 702, advisory committee's note to 2000 amendment.

Finally, Hyland's opinions are not subject to exclusion based on late disclosure.  As background, under the scheduling order in this case, expert opinions were subject to a staggered disclosure schedule—the "party with the burden of proof on an issue" was required to provide expert disclosures by a certain date and the "responding party (not having the burden of proof on the issue)" was required to provide expert disclosures about a month later.  (Doc. 16 at 2-3.)  Both sides were subject to the same deadline for completing expert depositions, which was about a month after the responding party's disclosure deadline.  (*Id.* at 3.)  Plaintiff's hyper-technical argument, raised for the first time in his reply, is that because Defendants have now clarified that Hyland's opinions are intended to support Defendants' affirmative defenses (as opposed to being used to undermine Plaintiff's claims), they should have been disclosed by the first expert-disclosure deadline in the scheduling order rather than the second, slightly later one.  But even assuming this is correct (and further assuming that Plaintiff did not forfeit this argument by raising it for the first time in his reply, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)), the fact that Hyland's opinions were disclosed about one month late would not automatically compel their exclusion.  Under Rule 37(c)(1), "[i]f a party fails to

provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." On this record, any late disclosure was harmless because Plaintiff still received Hyland's report more than a month before the expert-deposition deadline and was, in fact, able to depose him by that deadline.[2]

III.     Defendants' Motion To Exclude Stokes

     A.     **Stokes's Opinions**

Plaintiff retained Michael Stokes, whose qualifications are not at issue here, to "calculate[] and revise[] the present value of the loss of earnings, income and fringe benefits sustained by [Plaintiff]." (Doc. 55-1 at 2.) In a report issued on July 10, 2023, Stokes calculated this figure as $749,041. (*Id.*) When doing so, Stokes assumed that but-for Plaintiff's termination, Plaintiff would have worked for an additional 13.5 years as a firefighter. (*Id.* at 7 ["At the time of his termination, [Plaintiff] was 51 years of age. Given his level of educational attainment, the normal worklife expectancy is 13.5 years through 2032.6. At that time, [Plaintiff] would be 64.6 years old."].) Stokes also used Plaintiff's past earnings as a firefighter as the foundation for his assumptions about what Plaintiff would have earned during this 13.5-year period. (Doc. 55-1 at 4-5 [Stokes report]; Doc. 66-1 at 22 [Stokes deposition].)

     B.     **The Parties' Arguments**

Defendants argue that Stokes's opinions should be excluded because they are based on the false assumption that Plaintiff would have worked for another 13.5 years as a firefighter but-for his termination. (Doc. 66 at 2-3.) According to Defendants, this assumption is false because Plaintiff successfully applied for disability benefits in 2020, with a disability onset date of February 20, 2019. (*Id.*) Defendants conclude: "Stokes' opinion is based upon incorrect and incomplete facts. He did not know [Plaintiff] is disabled. This fundamental error permeated throughout Stokes' entire analysis, including

---

[2]     Plaintiff acknowledges that "August 11, 2023 . . . is when Defendants disclosed Hyland." (Doc. 70 at 3.) The deadline to depose experts was September 15, 2023 (Doc. 16 at 3), and Plaintiff deposed Hyland on September 6, 2023 (Doc 65-1 at 36).

wrongfully relying upon a 'normal work life expectancy' rather than a disability work expectancy, and wrongfully assuming no disability exists in his calculation of [Plaintiff's] claimed economic damages.  If Stokes had known [Plaintiff] is disabled, it would have changed his entire analysis and opinion.  Stokes' error therefore goes beyond creating an area ripe for cross-examination and renders his opinion useless, unhelpful to the jury, and irrelevant." (*Id.* at 6.)

In response, Plaintiff argues that Stokes's assumption of a normal worklife expectancy of 13.5 years is not inconsistent with the disability determination because Plaintiff's "medical retirement only required that he could no longer do a particular job, firefighting" and did not "require him to have a permanent disability," and indeed he has continued to perform other jobs since his termination.  (Doc. 68 at 2-3.)  Plaintiff continues: "Here, the facts are in dispute regarding the reasons for Plaintiff's discharge and whether he could have continued to perform his job if not discriminated against by Defendants. Stokes' testimony logically advances a material aspect of Plaintiff's case and should be permitted." (*Id.* at 4.)

In reply, Defendants argue: "[Plaintiff] cannot ignore, for purposes of his damages calculations, the undisputed fact that he applied for and received disability retirement benefits, or that he averred in his disability retirement application . . . that he was disabled as of February 20, 2019.  These facts lead to only one conclusion, which is that, as of February 20, 2019, [Plaintiff] did not have a 'normal work life expectancy' to continue working as a fulltime firefighter.  Yet, Stokes calculated [Plaintiff's] damages based upon the false belief that [Plaintiff] would continue to earn full-time firefighter wages.  Because Stokes' opinions are based upon a false assumption, Stokes' opinions are unduly speculative.  [Plaintiff] cannot have it both ways.  Either he is disabled and cannot perform the duties of a firefighter (in which case his economic expert must consider his disability) or he is not disabled and can perform the duties of a firefighter (in which case he would not qualify for disability retirement).  But he cannot ignore the contradiction between these two positions and claim his theory of the case allows him to claim full-time firefighter

1    wages while simultaneously claiming he is disabled and unable to perform."  (Doc. 69 at
2    2-3.)

3             **C.**     **Analysis**

4          Although the issue presents a close call, the Court concludes that the asserted flaws
5    in Stokes's analysis go its weight, rather than admissibility, and that Defendants' motion
6    to exclude Stokes should therefore be denied.

7          Stokes assumed, for purposes of his calculations, that Plaintiff would have worked
8    for another 13.5 years as a firefighter (until the age of 64.6) and also used Plaintiff's past
9    earnings as a firefighter as the foundation for his assumptions about what Plaintiff would
10   have earned during this 13.5-year period.  If it were undisputed that Plaintiff became
11   permanently disabled as of 2019, such that Plaintiff was thereafter unable to hold *any*
12   paying job, there is a strong argument that Stokes's assumptions would simply be too
13   untethered to reality to permit the admission of his opinions.  *See, e.g.*, *Unknown Party v.*
14   *Ariz. Bd. of Regents*, 2022 WL 4481519, *11 (D. Ariz. 2022) ("Although experts have
15   broad leeway to rely on assumptions when formulating opinions, there is a limit.  One such
16   limit is when an opinion is based on an assumption that is demonstrably and inarguably
17   incorrect."); *Hanna v. Reg'l Trans. Comm'n*, 2008 WL 11450865, *4 (D. Nev. 2008)
18   ("Plaintiff's expert testimony fails to meet the threshold Rule 702 requirement of assisting
19   the trier of fact because it is based upon a false factual assumption vital to the conclusion
20   Plaintiff was the most qualified applicant.").

21         However, the evidence here is more nuanced and could lead a reasonable juror to
22   conclude that, notwithstanding the disability finding, Plaintiff retained the ability to
23   continue working and earning wages and will continue to work until the age of 64.6, just
24   as Stokes assumed.  (Doc. 68-1 at 3-6 [Plaintiff's deposition testimony concerning his paid
25   work following the disability finding].)  Furthermore, although the disability finding may
26   eliminate the possibility that Plaintiff could have held one particular job—his previous job
27   as a firefighter—following his termination,[3] this at most means that Stokes's assumptions

28   ────────────────────

[3]    During oral argument, Plaintiff's counsel stated that the Public Safety Personnel
Retirement System's disability finding would not necessarily prevent Plaintiff from

about the amount of wages Plaintiff would have earned from his 13.5 years of post-termination work are incorrect.  (Doc. 68-1 at 5 [Plaintiff's deposition testimony that he usually works 35 hours per week, at a rate of $15 per hour, in the job he has held since the disability determination].)  The possibility that Stokes's calculated damages figure may need to be reduced, because it is based on an inaccurate assumption, is not a reason to categorically exclude Stokes from testifying.  *Cf. Marsteller v. MD Helicopter Inc.*, 2018 WL 3023284, *2 (D. Ariz. 2018) ("The challenges to Equals' opinions and the weaknesses in his assumptions are issues to be explored on cross-examination.").

Accordingly,

**IT IS ORDERED** that:

1.     Plaintiff's motion to exclude Hyland (Doc. 65) is **granted in part and denied in part**.

2.     Defendants' motion to exclude Stokes (Doc. 66) is **denied**.

Dated this 18th day of September, 2024.

Dominic W. Lanza
United States District Judge

---

returning to work as a firefighter.  The Court appreciates this clarification and simply notes that, for present purposes, it is unnecessary to explore this issue in further detail.